decision and we'll turn to the second case on our calendar Dark Storm Industries 20-2725. Good afternoon your honors, James Maloney for the Plaintiff's Appellants. Can you all hear me very well? Yes indeed. Very good, thank you. Well I think the panel wants to hear mostly about the mootness issue. There was a request for additional briefing and and I saw just the other day a 28-J letter that essentially seems like a sure reply. I'd like to save most of my talk about that for my rebuttal because I'll get a chance to hear from opposing counsel before that. But I think the the main point that was raised there was that the executive order has expired. But I guess my answer to that would be well I thought their point was broader than that. It was that the statute authorizing the executive order had expired. You're right Judge Cabranes, Judge Cabranes you're right. But I guess it still is moot. I take no offense. I asked as I said once before I'm Newman, he's Cabranes. I'm flattered he might not be. Well you know the problem is is my screen I have to look up as opposed to look at the camera so I hear a voice and I think I know whose voice it is. In any event the argument relates to the expiration of the statute. Yes okay so the statute expires so the legislature can you know redo it if the time comes. The question really about mootness is whether there's a reasonable prospect that these measures could recur. And what makes it reasonable? The fact that we're in a new element here. This has never happened in the history of the human race. Spanish flu is not even comparable. We have something going on here that has you know gone around the globe morphed into various forms and we're battling it now for a good you know coming up on two years. It's COVID-19. It began its appearance in late 2019. It's morphed in form. The likelihood that other measures will have to be taken that may go back to what we've seen before is at least reasonable if not even high. Even if something should happen in the future that prompts the New York Legislature to do something why why should we assume that what they'll do is exactly what they did a year ago? I mean you've got a new governor for one thing they may if they do give a governor power they may give the governor entirely different power than they gave the last governor. Why should we assume it'll be the same statute? I don't think you need to assume that it's the same. I think you need to assume that the questions raised about the power of the executive and in New York also the power of this Empire State Development Corporation that has been given that executive power by delegation I think those issues will recur just as readily. Why would we if we were to look at whether the delegation is proper which sounds to me like it's sort of a state law question. In any event why would we have to see what the new statute you apprehend says rather than assume it'll pose the exact same questions you're raising now? Because to address this question we'll address that question and here of course I go out on a limb a little bit by saying that sounds like an advisory opinion. Yeah we need something to chew on we need we need an executive order that that you think impairs your client's Second Amendment rights. But right now we're guessing. Why would we do that? I once served in the state legislature I wouldn't take too kindly to being told some federal judge's decision about what the Second Amendment does it doesn't say when I haven't done a darn thing. Why would what what kind of real estate federal relationship is that? And I guess it's also a separation of powers question too. Yeah there is separation of powers. Indeed why does it serve your purpose? If we were to say oh yes counsel is right we can predict what the statute would say and we can predict what executive order would issue under a new statute and then we were to reject you on the merits and say it's okay you would have suffered an adverse Second Amendment ruling that might turn out to be totally hypothetical. Why do you want that? I'll tell you exactly why I don't want that Judge Newman and I got your name right this time didn't I? The reason I would like to see that and this goes beyond the parameters of this case is quite simple. We are dealing not only with a very new problem with COVID we're dealing with a very old problem that has not been addressed in in its most essential way for 217 years. The Second Amendment was not interpreted by the Supreme Court as to its most fundamental question until Heller in 2008 217 years after it was decided. Yeah that may be so it sounds like you're willing to risk an advisory opinion in the hope that the advisory opinion will come out your way even though it would be nonetheless advisory. To tell you the truth I am less concerned personally about which way it comes out than about the idea that jurisprudence of the Second Amendment evolves quickly because it's necessary if we're going to solve the problem of gun violence in America. It may evolve it will evolve by courts that have jurisdiction over the dispute not hypothetical jurisdiction. Well that's obviously the big question and I can only argue so strongly about you know the mootness. I mean I see the point that I think all three of you have in mind which is there is no operative executive order now. On the other hand the court below found that it still was operative in the sense that it was reasonably likely or there was reasonable prospect for recurrence. Now you keep saying order and I keep saying statute. Well that's true okay and that begs the question of the the element of it that goes to separation of powers at the state level as opposed to just mootness on terms of the order. But I would say in any event just so we understand your point is we should think there's a reasonable possibility that there will be a new statute which will authorize a new governor to issue the same or very similar executive order all of which if issued would be unconstitutional under the Second Amendment right? I hate to be painted in that corner but I guess I would have to say essentially yes but my caveat to that would be that these are new circumstances that may make it worthwhile for courts to rethink the doctrine of mootness in terms of the practical applications to law. That's my final comment on that and I'll I 20 seconds left but I think I'd like to end on that and and hear from my opponent and and then get back to some of the perhaps more mundane arguments. So I thank you all and I will cede my eight seconds to Mr. Brockner. Thank you Mr. Brockner. I may please the court Dustin Brockner on behalf of appellees. This appeal is moot. The challenge of restriction hasn't existed for nearly 16 months. The state of emergency has expired and unless as your honors were discussing and unless a new law is passed the governor lacks the authority to reimpose that for the reasons first for the reasons your honors were discussing and that is you know the defendant here is not free to revert to her old ways and the legislature has repealed the provision that authorized a governor to impose a challenge restriction. So unless the legislature amends the law the governor cannot do so and so in addition to this changed legal landscape which itself renders this case moot I'd actually like to talk about the change in the public health landscape since March 2020 so and and under that change in the public health landscape there's no reasonable expectation that the governor would even if she could impose a challenge restriction which today would mean a order that requires all retailers deemed non-essential across the entire state to cease in-person sales and it does not allow for curbside pickup and applies regardless of vaccination status. Opposing counsel sort of alludes to the Delta variant and and how the virus has has has morphed but you know while the variant may lead to uptick in cases from a COVID response perspective they don't bring us back to March 2020. At the time there was no vaccine, no known treatment, inadequate testing, PPE shortages, and undeveloped sense of how the virus spread and in short we didn't know where the virus was spreading, how it was spreading, or what measures would work and we're in a vastly different world today from a COVID response perspective. We have vaccines. Over 70% of New York adults are fully vaccinated and it's only a matter of time for children under 12 are eligible. Hospitals are using therapeutics and they've overcome the PPE shortages. We also have testing that lets us identify where the virus is spreading and we have a better understanding of how it spreads. So given these developments the state has significantly refined its COVID response. Indeed before the state of emergency expired the governor had used much more targeted measures both in terms of geographically and in terms of what activities are regulated and that is why also since the restriction was lifted in May 2020 the governor has not sought to reimpose anything remotely like the challenge restriction here. Indeed during last winter's surge cases reached a record high and fatalities increased and deaths unfortunately increased but even then the governor did not propose imposing any new statewide restrictions on retailers let alone anything that looks like the challenge restriction here. So there's no reasonable prospect that the governor would or even could reimpose the challenge restrictions. This appeal should be dismissed as moved. All right Mr. Mulroney, your reservations. Technically when you say dismissed wouldn't we technically remand with directions for the district court to dismiss the case? I know your honor if you look at 36 apartment associates which is a another appeal involving an expired executive order the there the court just dismissed the appeal as moot and I think a proper course would would be true true as well would be would apply here. Mr. Maloney. Yes thank you your honors. I would like the opportunity if I may and I guess I address this question to Judge Cabranes as chair of the panel to submit a very brief no more than three pages response to some of the COVID issues inherent in in what my opponent put in in his 28 J letter. Rather than try to use this two minutes to do that what I'd like to do now is is essentially pick up on the thread I left before. We are in new territory here. The law is meant to address problems that society has in a way. We have a clear test of the limits of the executive and it's one in which the executive in this case very clearly targeted gun sales and gun stores as over against other retail enterprises. Liquor stores were kept open. Liquor stores there was much more transaction going on. People walking in and out all the time. The governor's last executive order was about the gun crisis in New York. The second amendment is about the most politicized constitutional issue I can imagine and I think that we have to be well aware that it is something that is a problem and I say it I mean the tension between the Second Amendment which is a recognized right and the horrible horrible situation we have in America with gun violence. In order to solve that problem we need an established jurisprudence of the Second Amendment. We need to do everything we can to get that up to the Supreme Court as soon as possible whatever the composition of the court may be so that we have some means of reaching consensus and I say we I mean the legislature's for the most part all three branches play a role and here you have a very stark situation in which an executive made a decision again through what may be a state court question you know this executive agency this Corporation Empire State Development but made a decision that was really not based on the COVID questions but based on policymaking. Now is it moot? That really is, mootness is in the eye of the beholder. Under old doctrines of mootness I guess I'd concede it has to be moot but I think that if you want Old doctrines of mootness you mean binding authority? Well yeah binding authority but how binding? I mean that well generally that troubles us we tend to follow what others have decided because that's our decisions it's how you know how people that's what the certainty of the rule of law is so I mean we're inclined to follow what our predecessors in fact were required to absent the the court reversing an opinion to this so how what what what allows us to adopt a new law of mootness? I think there's enough wiggle room in the doctrine that requires only that there be a reasonable prospect of repetition. I know the prospect seems lesser. What is that what is that reasonable prospect? Identify it for me as a fact. Yeah it's the uncertainty. Has Governor Hochul said a single thing about anticipating re-reclosing the gun stores? Has she made a statement about about her views on the Second Amendment? She's from Queens. She's had views different from her predecessor considerably with regard to like licenses for illegal immigrants things like that. What what sense do you get that she's going to repeat what Governor Cuomo did? Well you know I might respond to that by pointing out that you know. Money will I suppose. Sorry? Go ahead. I mean maybe the question really is not so much whether one governor in one state will do that but whether given the likely trajectory of this virus and perhaps other viruses that we're going to see given the inevitability of this one happening in the first place might be the question that the question would be really will an executive do that very thing again and use. So we should issue an order to advise somebody in West Virginia? No. You should decide the facts as presented here. Okay. As if there is indeed a reasonable prospect of its recurrence but looking at that from a broader perspective than the usual perspective. The worst case scenario is you get reversed. You know it's not the worst case in the world and the better case scenario is that law gets made that can help us to solve two very big problems we have. Be careful be careful who you put the pen into whose hand you put the pen Mr. Mahoney. Be careful who you put the pen into whose hand okay? And I don't want to put too much into the hands of the listener. That's awesome power you're talking about sir. Thank you. But you're not final so I'm not that worried about this panel. Oh really? I appreciate your advising us that we might get reversed. That's very comforting. I don't think I'm telling you anything you don't know. I'm just trying to make you think about this because I know I'm kind of on the losing end of this mootness argument but I'd like to point out some some light at the end of the tunnel if you think about going the other way. All right. We're not final nor infallible as the phrase says. Okay. Right. Thank you. Thank you your honor. Maloney do you really need that time? I'm a very easy presider so I'm just you said you wanted three pages? Right just a quick letter about COVID and stuff like that. All right. By Monday September 27. Very good. Thank you your honor. Thank you Judge Newman and Judge West. And then the state can respond by Friday October 1. Thank you. So ordered. Absent objection or comment. All right. Thank you.